IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BARBARA GARCIA QUIROZ, individually and as the INDEPENDENT ADMINISTRATRIX OF THE ESTATE OF JAVIER QUIROZ, Deceased

      Plaintiff,

  vs.

STACEY LYN GALLAGHER, D.O.; MEDEXPRESS URGENT CARE, P.C.- UNIONTOWN; MEDEXPRESS URGENT CARE, P.C.- PENNSYLVANIA, BRYAN STUTCHELL & FRANK W. ALDERMAN t/a MEDEXPRESS URGENT CARE- UNIONTOWN; ANTHONY D'ALESSIO, M.D., UNIONTOWN HOSPITAL; and FAYETTE REGIONAL HEALTH SYSTEM,

      Defendants.

CIVIL ACTION 16-

## COMPLAINT

Plaintiff, BARBARA GARCIA QUIROZ, individually, and as the Independent Administratrix of the Estate of JAVIER QUIROZ, deceased, through her attorney HOWARD M. LOUIK, Esquire files the following Civil Action Complaint to recover damages under the Pennsylvania Wrongful Death and Survival Statute against Defendants, STACEY LYN GALLAGHER, D.O.; MEDEXPRESS URGENT CARE, P.C.-UNIONTOWN; MEDEXPRESS URGENT CARE, P.C.- PENNSYLVANIA, BRYAN STUTCHELL and FRANK W. ALDERMAN t/a MEDEXPRESS URGENT CARE- UNIONTOWN; ANTHONY D'ALESSIO, M.D.; UNIONTOWN HOSPITAL and FAYETTE

REGIONAL HEALTH SYSTEM to recover damages upon the following causes of action and in support thereof, sets forth as follows:

## I.     PARTIES

1.      Plaintiff, BARBARA GARCIA QUIROZ, is an individual and resident of Cameron County, Texas. The plaintiff was on June 14, 2016 appointed in the County Court of Cameron County, Texas, as Independent Administratrix of the Estate of Javier Quiroz, Decedent ("**Estate**") at proceedings No. 2015-CPC-00465.

2.      Javier Quiroz ("**Plaintiff's Decedent**" or "**Mr. Quiroz**"), then age 52, died December 3, 2014 at Uniontown Hospital ("**Uniontown Hospital**"), located in Uniontown, Fayette County, Pennsylvania.  Plaintiff, Barbara Garcia Quiroz, is the surviving spouse and only heir of Decedent.

3.      Plaintiff's Decedent having brought no action during his lifetime against the defendants herein for damages for the injuries causing his death, and no other action for wrongful death of Plaintiff's Decedent having been brought against the defendants, plaintiff brings this action on behalf of the Estate of Javier Quiroz, deceased, and on behalf of the following persons who are the only other persons entitled to recover damages in this suit:

(a) Barbara Garcia Quiroz, surviving spouse of Javier Quiroz, deceased.

4.      Defendant, STACEY LYN GALLAGHER, D.O ("**Dr. Gallagher**"), is a resident of the Commonwealth of Pennsylvania and licensed osteopathic physician who practices medicine in the field of family medicine. At the time set forth hereafter Dr. Gallagher provided professional medical services as a physician to Mr. Quiroz at an urgent care facility known as MedExpress Urgent Care-Uniontown located at 325 McClellandtown Road, Uniontown, Fayette County, Pennsylvania, 15401. Plaintiff is asserting a medical professional liability claim

against Dr. Gallagher. A certificate of merit with respect to the professional liability claim against Dr. Gallagher is attached and marked **Ex. 1**.

5.      Defendant, MedExpress Urgent Care, P.C.-Uniontown ("**MedExpress Uniontown, P.C.**"), is a Pennsylvania professional corporation with offices at 7219 McKnight Rd Ste. F, Pittsburgh, Allegheny County, Pennsylvania 15237. MedExpress Uniontown, PC was merged into defendant, MedExpress Urgent Care, P.C.-Pennsylvania, effective May 1, 2012. At the time set forth in this complaint Dr. Gallagher was either a shareholder, officer, partner, employee, agent or ostensible agent of MedExpress Uniontown, P.C. At all material times hereto, MedExpress Uniontown, P.C. acted by and through its shareholders, officers, partners, agents, ostensible agents, and/or employees, including Dr. Gallagher, acting within the course, scope and authority of their employment and agency. Plaintiff is asserting a medical professional liability claim against MedExpress Uniontown, P.C. for both vicarious liability and direct corporate negligence. A certificate of merit with respect to the professional liability claim against MedExpress Uniontown, P.C. is attached and marked **Ex. 2**.

6.      Defendant, BRYAN STUTCHELL ("**Stutchell**") is an individual and resident of the State of West Virginia. Stutchell, together with defendants Frank W. Alderman and defendant MedExpress Urgent Care, P.C.-Pennsylvania, own and operate an urgent care center known as MedExpress Urgent Care-Uniontown located at 325 McClellandtown Road, Uniontown, Fayette County, Pennsylvania 15401. While not licensed by the Pennsylvania Department of Health, MedExpress Urgent Care-Uniontown provides professional health care services through licensed health care providers such as Dr. Gallagher. Plaintiff is asserting a medical professional liability claim against Stutchell for both vicarious liability and direct corporate negligence as the result of his ownership of MedExpress Urgent Care-Uniontown. A

certificate of merit with respect to the professional liability claim against Stutchell is attached and marked **Ex. 3**.

7.       Defendant, FRANK W. ALDERMAN ("**Alderman**") is an individual and resident of the State of West Virginia. Alderman, together with defendants Stutchell and defendant MedExpress Urgent Care, P.C.-Pennsylvania, own and operate an urgent care center known as MedExpress Urgent Care-Uniontown located at 325 McClellandtown Road, Uniontown, Fayette County, Pennsylvania 15401. While not licensed by the Pennsylvania Department of Health, MedExpress Urgent Care-Uniontown provides professional health care services through licensed health care providers such as Dr. Gallagher. Plaintiff is asserting a medical professional liability claim against Alderman for both vicarious liability and direct corporate negligence as the result of his ownership of MedExpress Urgent Care-Uniontown. A certificate of merit with respect to the professional liability claim against Alderman is attached and marked **Ex. 4**.

8.       Defendant, MEDEXPRESS URGENT CARE, P.C.- PENNSYLVANIA ("**MedExpress Pennsylvania, P.C.**") is a Pennsylvania professional corporation with a registered office of 7219 McKnight Rd., Ste. F, Pittsburgh, Allegheny County Pennsylvania 15237. MedExpress Pennsylvania, P.C. together with defendants Stutchell and Alderman own and operate an urgent care center known as MedExpress Urgent Care-Uniontown located at 325 McClellandtown Road, Uniontown, Fayette County, Pennsylvania 15401. While not licensed by the Pennsylvania Department of Health, MedExpress Urgent Care-Uniontown provides professional health care services through licensed health care providers such as Dr. Gallagher. At the time set forth in this complaint Dr. Gallagher was either a shareholder, officer, partner, employee, agent or ostensible agent of MedExpress Pennsylvania, P.C. At all material times

4

hereto, MedExpress Pennsylvania, P.C. acted by and through its shareholders, officers, partners, agents, ostensible agents, and/or employees, including Dr. Gallagher, acting within the course, scope and authority of their employment and agency. Plaintiff is asserting a medical professional liability claim against MedExpress Pennsylvania, P.C. for both vicarious liability and direct corporate negligence. A certificate of merit with respect to the professional liability claim against MedExpress Pennsylvania, P.C. is attached and marked **Ex. 5.**

9. The urgent care center where Mr. Quiroz sought medical treatment at the time hereafter set forth is located at 325 McClellandtown Road, Uniontown, Fayette County, Pennsylvania 15401 and is advertised to the public as *MedExpress Urgent Care-Uniontown*. Defendants, Stutchell, Alderman and MedExpress Pennsylvania, P.C., trade and do business under the fictitious name "MedExpress Urgent Care-Uniontown."

10. Defendants, MedExpress Uniontown, P.C., MedExpress Pennsylvania, P.C., Stutchell and Alderman are collectively referred herein as "**MedExpress**".

11. Defendant, ANTHONY D'ALESSIO, M.D., ("**Dr. D'Alessio**") is resident of Pennsylvania and licensed medical physician who practices medicine in the field of emergency medicine. At the time set forth hereafter Dr. Gallagher provided professional medical services as a physician to Mr. Quiroz at defendant, Uniontown Hospital, located at 500 West Berkeley St., Uniontown, Fayette County, Pennsylvania 15401. Plaintiff is asserting a medical professional liability claim against Dr. D'Alessio. A certificate of merit with respect to the professional liability claim against Dr. D'Alessio is attached and marked **Ex. 6.**

12. Defendant, UNIONTOWN HOSPITAL, is a Pennsylvania non-profit corporation that owns and operates an acute care hospital providing outpatient, emergency health and inpatient care at 500 West Berkeley St., Uniontown, Fayette County, Pennsylvania

15401. At all material times hereto, Uniontown Hospital acted by and through its shareholders, officers, partners, agents, ostensible agents, and/or employees, including Dr. D'Alessio, acting within the course, scope and authority of their employment and agency. Plaintiff is asserting a medical professional liability claim against Uniontown Hospital for both vicarious liability and direct corporate negligence. A certificate of merit with respect to the professional liability claim against Uniontown Hospital is attached and marked <u>Ex. 7.</u>

13.     Defendant, FAYETTE REGIONAL HEALTH SYSTEM, is a Pennsylvania non-profit corporation located at 500 West Berkeley St., Uniontown, Fayette County, Pennsylvania 15401. Fayette Regional Health System owns and operates Uniontown Hospital. At all material times hereto, Fayette Regional Health System acted by and through its shareholders, officers, partners, agents, ostensible agents, and/or employees, including Dr. D'Alessio, acting within the course, scope and authority of their employment and agency. Plaintiff is asserting a medical professional liability claim against Fayette Regional Health System for both vicarious liability and direct corporate negligence. A certificate of merit with respect to the professional liability claim against Uniontown Hospital is attached and marked <u>Ex. 8.</u>

14.     Those defendants previously referenced herein as "MedExpress", together with defendant Uniontown Hospital and defendant Fayette Regional Health System, are hereafter collectively referenced the "**Corporate Defendants**."

## II.     JURISDICTION AND VENUE

15.     The diversity jurisdiction of this court is invoked under 28 U.S.C. §1331(a)(1) as the matter in controversy is between citizens of different States.

16.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

17.     Venue is proper in this judicial district as a substantial part of the events or omissions giving rise to the causes of action asserted by plaintiff occurred in Fayette County, Pennsylvania. See, 28 U.S.C. §1391(b)(2).

### III.     GENERAL AVERMENTS

18.     The events giving rise to the various causes of action asserted herein occurred between December 2, 2014 and December 3, 2014 in Uniontown, Fayette County, Pennsylvania.

19.     On December 2, 2014 Mr. Quiroz, a 52-year old obese Hispanic male, presented to MedExpress Uniontown at approximately 1:24 p.m. with complaints of anterior chest pain x 10 hours, nausea, shortness of breath, abdominal pain, and multiple diarrheal stools. The patient denied vomiting. Height and weight were recorded at 5'5" and 230 lbs. with a calculated body mass index (BMI) exceeding 38.

20.     Sometime after initial presentation at MedExpress Uniontown Mr. Quiroz came under the care of Dr. Gallagher who noted the patient's complaints of chest pain together with active history of hypertension, diabetes and diverticulitis. A family history of coronary artery disease was also recorded. Mr. Quiroz's initial vital signs upon presentation to MedExpress Uniontown reflected a pulse of 120 beats per minute, a blood pressure of 90/50 mmHg, respirations of 24 breaths per minute and a temperature of 98.0 degrees Fahrenheit (F).

21.     On physical examination Dr. Gallagher noted dry oral mucosa, tachypnea, decreased bilateral breath sounds in the bilateral lung fields, bilateral wheezing, tachycardia, anterior chest tenderness upon palpation and diffuse abdominal tenderness.

22.     Despite the patient's complaints, clinical signs, symptoms and physical examination the only laboratory evaluation ordered by Dr. Gallaher and performed at MedExpress Uniontown consisted of a 12-lead electrocardiogram that confirmed the presence of sinus tachycardia and a fingerstick glucose, which yielded a value of 173 mg/dL. No chest x-ray or other imaging studies were ordered by Gallagher or performed at MedExpress Uniontown.

23.     Dr. Gallagher made an initial diagnosis of gastroenteritis, food poisoning, unspecified chest pain, dehydration and headache. Thereafter, beginning at 1:48 p.m. Mr. Quiroz received 2.5 liters of intravenous (IV) normal saline solution over a period of 143 minutes; 30 mg ketorolac IV injection for pain; 4 mg ondansetron (Zofran) for nausea; and, 2.5 mg albuterol sulfate via inhaled nebulized solution.

24.     No respirations or temperature was recorded in the medical record after the initial vital signs were taken at 1:24 p.m. At 4:09 p.m., the last time that vital signs were recorded at MedExpress Uniontown, Mr. Quiroz's continued to have an elevated heart rate of 121 beats per minute and a blood pressure of 98/60 mmHg despite a history of active hypertension.

25.     Upon discharge at 4:22 p.m. Dr. Gallagher's diagnosis was "chest pain, unspecified; dehydration; food poisoning unspecified; and headache." At the time of discharge Mr. Quiroz was also given a prescription for 4 mg. Zofran for nausea every six hours, PRN.

26.     Approximately 5 ½ hours following discharge from MedExpress Uniontown, Mr. Quiroz presented at the emergency department of Uniontown Hospital via wheelchair at 9:48 p.m. Complaints at that time included ongoing sharp precordial chest pain since the prior morning associated with productive cough and increasing shortness of breath.

27.     Initial vital signs in the emergency department indicated a blood pressure of 101/53 mmHg, a pulse of 110 beats per minute and respirations of 22 breaths per minute. Pulse oximetry on room air was recorded at 94%.

28.     Sometime after presentation at the emergency department Mr. Quiroz was evaluated by Dr. D'Alessio who noted the patient's recent history of chest pain, dyspnea, diffuse headache and diarrhea. Past medical history was recorded as positive for hypertension and diabetes. Significantly, Dr. D'Alessio physical examination noted diminished bilateral breath sounds and abdominal tenderness in the right upper quadrant.

29.     At some point after presentation Dr. D'Alessio ordered blood work for Mr. Quiroz that at 10:12 p.m. reported, *inter alia*, a bicarbonate of 14 (N=21-32 mmol/L); a white blood cell count of 34,200 with a left shift; a BUN of 30 (N=7-21 mg/dL); creatinine of 4.3 (N=0.8-1.6 mg/dL); glucose of 156 (N=70-100 mg/dL); and an anion gap of 22 (N=6.0-15.0 mmol/L). A chest x-ray performed at 10:01 p.m. demonstrated the presence of "increased density or consolidation consistent with pneumonia in the left upper lobe."

30.     While Mr. Quiroz was being evaluated in the emergency department of Uniontown Hospital Dr. D'Alessio's differential diagnoses included: "1. Acute community-acquired pneumonia; 2. Renal failure; 3. Leukocytosis with a left shift, rule out bacteremia, rule out sepsis with a low blood pressure; and 4. Systemic inflammatory response syndrome."

31.     As the result of his differential diagnoses Dr. D'Alessio ordered 500 ml of normal saline to be administered intravenously to increase the patient's blood pressure, intravenous hydromorphone and ondansetron, and intravenous ceftriaxone and azithromycin as antibiotic coverage; he later added intravenous piperacillin-tazobactam as additional antibiotic coverage.

Dr. D'Alessio also made plans to closely monitor the patient in the emergency department and then admit Mr. Quiroz to a medical/surgical unit for ongoing care.

32.     Following the interventions detailed above and prior to his inpatient admission to the hospital, Mr. Quiroz became more restless and agitated in the emergency department and was given 1 milligram of lorazepam (Ativan) per Dr. D'Alessio's order. Another order for Ativan was obtained at approximately 1:00 a.m. after the patient pulled out his IV in the emergency department.

33.     An arterial blood gas was subsequently obtained at 10 minutes after midnight on December 3, 2014, which disclosed a pH of 7.04, a Pa CO2 of 26, and PaO2 of 115 on 4-liters of oxygen via nasal cannula.

34.     In response to the reported blood gas values Dr. D'Alessio placed Mr. Quiroz on 6-liters oxygen via nasal cannula and made plans to transfer him directly to the intensive care unit ("**ICU**") because of his acute metabolic acidosis, renal failure and sepsis. At approximately 1:00 a.m. Mr. Quiroz was transferred to the ICU with the charge nurse and a paramedic due to his agitation in the emergency department.

35.     Upon arrival to the ICU at 1:15 a.m. the receiving nurse charted "unable to obtain vital signs, patient was cold to touch, diaphoretic and mottled. Temp was 34.4 (degrees centigrade) unable to get other vital signs, mean BP and no sats (oxygen saturation). Pupils were fixed and unresponsive." Multiple attempts were made to gain IV access.

36.     The history and physical in the ICU also recorded: "Upon presentation to the intensive care unit, the patient's pupils were fixed and pinpoint. He was not responding to verbal or tactile stimuli." Lung sounds were reported as "very diminished" with some wheezes in the left

upper lobe. The patient was noted to have significant leukocytosis with left upper lobe pneumonia and acute renal failure.

37.     Another arterial blood gas was performed at 1:47 a.m. which revealed the patient to be in metabolic acidosis with a pH of 6.64, a Pa $CO_2$ of 92.7, and $PaO_2$ of 60.3. Following these results a member of the hospitalist team ordered one ampule of intravenous sodium bicarbonate to treat the patient's metabolic acidosis.

38.     Noninvasive positive pressure ventilation (BiPAP) was instituted for respiratory support, but Mr. Quiroz continued to deteriorate hemodynamically and anesthesia was called to intubate Mr. Quiroz at 02:20.  Shortly after endotracheal intubation, Mr. Quiroz developed progressive bradycardia with a subsequent pulseless electrical activity (PEA) cardiopulmonary arrest at 2:21 a.m.

39.     In the 34-minute resuscitation effort that followed, spontaneous return of circulation was only transiently achieved, and Mr. Quiroz could not be resuscitated.  He was pronounced dead at 2:55 a.m. on December 3rd, 2014. His death certificate lists immediate cause of death as multisystem organ failure with acute left upper lobe pneumonia and sepsis.

## COUNT I
### (Professional Negligence)
### (Vicarious Liability)

*Barbara Garcia Quiroz, individually and as the Independent Administratrix of the Estate of Javier Quiroz, deceased*
*v.*
*Stacey Lyn Gallagher, D.O.; MedExpress Urgent Care, P.C.-Uniontown; MedExpress Urgent Care, P.C.- Pennsylvania; Bryan Stutchell. Frank W. Alderman t/a/ MedExpress Urgent Care-Uniontown; Anthony D'Alessio, M.D.; Uniontown Hospital and Fayette Regional Health System*

40.     Plaintiff incorporates by reference the averments contained in each paragraph of the foregoing General Averments as if the same were set forth at length herein.

41.     Each instance of Dr. Gallagher's negligence hereafter set forth, then and there concurring with the negligence of Dr. D'Alessio, then and there concurring with the negligence of the Corporate Defendants as hereafter set forth, was the direct, proximate and legal cause of the death of Plaintiff's Decedent, Javier Quiroz.

*Allegations as to Dr. Gallagher and MedExpress*

42.     At all times relevant and material herein, Dr. Gallagher was acting as the agent, ostensible agent, servant and employee of MedExpress and was at all times acting within the scope of her authority/employment and with the knowledge and consent of MedExpress.

43.     Dr. Gallagher had a duty to Plaintiff's Decedent to provide medical care within the accepted standards of care for family medicine physicians applicable at the time of Mr. Quiroz's presentation at MedExpress Uniontown. Dr. Gallagher failed to provide reasonable care and treatment to Plaintiff's Decedent in accordance within the accepted standard of care as set forth hereinafter.

44.     Each instance of Dr. Gallagher's negligence and carelessness hereafter set forth, then and there concurring with the negligence and carelessness of Dr. D'Alessio and the Corporate Defendants, as hereafter set forth, was the direct, proximate and legal cause of the death of Plaintiff's Decedent, Javier Quiroz.

45.     At all times relevant and material herein, MedExpress held out to Mr. Quiroz that Dr. Gallagher was administering medical care and advice to him within the scope of her authority and with the knowledge and consent of MedExpress.

46.     At all times relevant and material herein, Mr. Quiroz accepted the services of Dr. Gallagher in the reasonable belief that her services and that of the urgent care center were being

rendered by the agents, ostensible agent, servants and employees of MedExpress acting within the scope of their authority and with the knowledge and consent of MedExpress.

47.     At all times relevant and material herein, MedExpress did nothing to inform Mr. Quiroz that Dr. Gallagher was acting as an independent contractor and not as an agent, ostensible agent, servant or employee acting within the scope of their authority and with the knowledge and consent of MedExpress.

48.     MedExpress is vicariously liable for the acts, commissions and omissions of Dr. Gallagher in her treatment of Mr. Quiroz as if it had undertaken the same acts, commissions and omissions itself.

49.     Dr. Gallagher had a duty imposed upon her by her professional relationship with Mr. Quiroz to have and use the same knowledge and skill and exercise the same care and skill, which is usually possessed and exercised in the medical profession.

50.     Because Dr. Gallagher held herself out to be a specialist in the field of family medicine, she had a duty imposed upon her by her professional relationship with Mr. Quiroz to use that same knowledge and skill and exercise the same care as that which is possessed and exercised by other experts in the field of family medicine.

51.     Dr. Gallagher had a duty imposed upon her by her professional relationship with Mr. Quiroz to keep informed of the contemporary developments in the field of family medicine and to utilize these contemporary developments in her care, treatment and monitoring of Mr. Quiroz.

52.     Dr. Gallagher had a duty imposed upon her by her professional relationship with Mr. Quiroz to use the same degree of care, treatment and monitoring of Mr. Quiroz as would a reasonable physician trained in family medicine under the circumstances.

53. Dr. Gallagher departed from the accepted standard of care for family medicine physicians in caring for and treating Plaintiff's Decedent in that she:

(a) Failed to appreciate and understand that Mr. Quiroz presented at MedExpress Uniontown with signs and symptoms of a serious life-threatening infection.

(b) Failed to diagnose that Mr. Quiroz had a serious life-threatening infection.

(c) Failed to take a proper or adequate history to account for the patient's clinical signs then and there appearing including chest pain associated with shortness of breath and productive cough.

(d) Failed to appreciate and understand that Mr. Quiroz presented at MedExpress Uniontown with signs and symptoms of pneumonia.

(e) Failed to appreciate and understand that Mr. Quiroz presented at MedExpress Uniontown with signs and symptoms of Systemic Inflammatory Response Syndrome ("**SIRS**").

(f) Failed to properly treat Mr. Quiroz's pneumonia thereby allowing the infection to eventually progress to severe sepsis with metabolic acidosis, renal failure and multi-organ failure.

(g) Failed to promptly treat Mr. Quiroz's infection and SIRS thereby allowing the infection to progress to severe sepsis with metabolic acidosis, renal failure and multi-organ failure.

(h) Misdiagnosed Mr. Quiroz's condition as gastroenteritis and food poisoning instead of SIRS and sepsis with upper lobe pneumonia.

(i)     Misdiagnosed Mr. Quiroz's condition as gastroenteritis and food poisoning while Plaintiff's Decedent left upper lobe pneumonia and SIRS was allowed to progress to severe sepsis, metabolic acidosis, renal failure and multi-organ failure.

(j)     Failed to order any lab work except for a single fingerstick glucose and 12-lead electrocardiogram.

(k)     Failed to order a basic metabolic panel and complete blood count that would have showed a highly elevated white blood cell count and severe life-threatening infection.

(l)     Failed to order a chest x-ray, which is part of the standard evaluation for a patient presenting with complaints of chest pain.

(m)     Failed to order a chest x-ray, which would have indicated the presence of left upper lobe pneumonia.

(n)     Failed to order, initiate and administer antibiotic coverage to treat Mr. Quiroz's infection and SIRS.

(o)     Failed to order, initiate and rapidly administer sufficient fluid resuscitation to treat Mr. Quiroz's life-threatening infection and SIRS.

(p)     Failed to measure Mr. Quiroz's lactate level or obtain blood cultures or to refer Mr. Quiroz to a facility that could obtain lactate levels and blood cultures.

(q)     Failed to inform Mr. Quiroz of the urgent care facility's limited medical services.

(r)   Failed to inform Mr. Quiroz that he was required to be seen at a facility providing higher levels of care in the presence of the clinical signs and symptoms then existing.

(s)   Failed to plan for Mr. Quiroz's transportation to a facility providing higher levels of care in the presence of the clinical signs and symptoms then existing.

(t)   Failed to communicate with other healthcare providers who could provide higher levels of care that were required for Mr. Quiroz in the presence of the clinical signs and symptoms then existing.

(u)   Permitted Mr. Quiroz to be discharged with abnormal vital signs values that were not significantly different than at the time of initial presentation.

(v)   Permitted Mr. Quiroz to be discharged with abnormal vital signs values that were not significantly different than at the time of initial presentation despite the administration of IV fluid resuscitation.

(w)   Failed to recommend to her patient prompt and urgent admission to an acute care hospital to permit rapid institution of intravenous antibiotics, additional IV fluids, IV sodium bicarbonate, and an immediate renal evaluation.

(x)   Failed to transfer Mr. Quiroz to an acute care facility for further intervention and resuscitative measures in the presence of the clinical signs and symptoms then existing.

(y)   To the extent they existed, failed to follow MedExpress' protocols or policies regarding the services and limitations of urgent care.

(z)     To the extent they existed, failed to follow MedExpress' protocols or policies regarding transfer to other healthcare facilities.

(aa)    To the extent they existed, failed to follow MedExpress' protocols or policies regarding patient follow-up and communications with other healthcare providers.

(bb)    Failed to properly diagnose and aggressively treat Mr. Quiroz's pneumonia thereby increasing the risk of and/or causing his death.

(cc)    Failed to properly diagnose and aggressively treat Mr. Quiroz's SIRS and infection thereby increasing the risk of and/or causing his death.

54.    MedExpress is vicariously liable for the negligence and carelessness of its agents, ostensible agents, employees, and/or servants including those specific acts of negligence and careless of Dr. Gallagher in her care and treatment of Mr. Quiroz as set forth above, incorporated herein by reference.

*Allegations as to Dr. D'Alessio, Uniontown Hospital and Fayette Regional Health System*

55.    At all times relevant and material herein, Dr. D'Alessio was acting as the agent, ostensible agent, servant and employee of Uniontown Hospital and Fayette Health System and was at all times acting within the scope of his authority/employment and with the knowledge and consent of Uniontown Hospital and Fayette Health System.

56.    Dr. D'Alessio had a duty to Plaintiff's Decedent to provide medical care within the accepted standards of care for emergency medicine physicians applicable at the time of Mr. Quiroz's presentation at Uniontown Hospital. Dr. D'Alessio failed to provide reasonable care and treatment to Plaintiff's Decedent in accordance within the accepted standard of care as set

forth hereinafter. Each instance of Dr. D'Alessio's negligence and carelessness was the direct, proximate and legal cause of the death of Plaintiff's Decedent, Javier Quiroz.

57.     Each instance of Dr. D'Alessio negligence and carelessness hereafter set forth, then and there concurring with the negligence and carelessness of Dr. Gallagher and the Corporate Defendants, as hereafter set forth, was the direct, proximate and legal cause of the death of Plaintiff's Decedent, Javier Quiroz.

58.     At all times relevant and material herein, Uniontown Hospital and Fayette Health System held out to Mr. Quiroz that Dr. D'Alessio was administering medical care and advice to them within the scope of his authority and with the knowledge and consent of Uniontown Hospital and Fayette Health System.

59.     At all times relevant and material herein, Mr. Quiroz accepted the services of Dr. D'Alessio in the reasonable belief that his services and that of the emergency department were being rendered by the agents, ostensible agents, servants and employees of Uniontown Hospital and Fayette Regional Health System within the scope of their authority and with the knowledge and consent of Uniontown Hospital and Fayette Regional Health System.

60.     At all times relevant and material herein, Uniontown Hospital and Fayette Regional Health System did nothing to inform Mr. Quiroz that Dr. D'Alessio was acting as an independent contractor and not as an agent, ostensible agent, servant or employee acting within the scope of his authority and with the knowledge and consent of Uniontown Hospital and Fayette Regional Health System.

61.     Uniontown Hospital and Fayette Regional Health System are vicariously liable for the acts, commissions and omissions of Dr. D'Alessio in his treatment of Mr. Quiroz as if they had undertaken the same acts, commissions and omissions themselves.

62.     Dr. D'Alessio had a duty imposed upon him by his professional relationship with Mr. Quiroz to have and use the same knowledge and skill and exercise the same care and skill, which is usually possessed and exercised in the medical profession.

63.     Because Dr. D'Alessio held himself out to be a specialist in emergency medicine, he had a duty imposed upon him by his professional relationship with Mr. Quiroz to use that same knowledge and skill and exercise the same care as that which is possessed and exercised by others in the field of emergency medicine.

64.     Dr. D'Alessio had a duty imposed upon him by his professional relationship with Mr. Quiroz to keep informed of the contemporary developments in the field of Emergency Medicine and to utilize these contemporary developments in his care, treatment and monitoring of Mr. Quiroz.

65.     Dr. D'Alessio had a duty imposed upon him by his professional relationship with Mr. Quiroz to use the same degree of care, treatment and monitoring of Mr. Quiroz as would a reasonable person trained in emergency medicine under the circumstances.

66.     Dr. D'Alessio departed from the accepted standard of care for emergency medicine physician in caring for and treating Plaintiff's Decedent in that he:

(a)     Failed to timely appreciate and understand that Mr. Quiroz presented at Uniontown Hospital with a life-threatening infection.

(b)     Failed to timely appreciate and understand that Mr. Quiroz presented at Uniontown Hospital with SIRS.

(c)     Failed to timely appreciate and understand that Mr. Quiroz presented at Uniontown Hospital in sepsis.

(d)     Failed to timely appreciate and understand that Mr. Quiroz presented at
        Uniontown Hospital in severe sepsis.

(e)     Failed to immediately draw an arterial blood gas to determine the patient's
        acid-base status.

(f)     Failed to aggressively intervene and treat Mr. Quiroz's SIRS and sepsis.

(g)     Failed to promptly treat Mr. Quiroz's metabolic acidosis with sodium
        bicarbonate.

(h)     Failed to order an immediate (STAT) renal consultation from an
        appropriate renal specialist.

(i)     Failed to timely recognize, intervene and aggressively treat the signs and
        symptoms of SIRS and sepsis while the patient was in the emergency
        department.

(j)     Failed to timely encourage the hospitalist to immediately admit the
        patient to the intensive care unit (ICU) of Uniontown Hospital.

(k)     Misdiagnosed Mr. Quiroz's confusion and agitation in the emergency
        department as possible alcohol withdrawal syndrome rather than possible
        signs and symptoms of SIRS and sepsis.

(l)     Ordered lorazepam (Ativan) which masked Mr. Quiroz's clinical
        condition of SIRS and sepsis.

(m)     Allowed the patient to deteriorate in the emergency department so that by
        the time of his admission to the ICU he was obtunded, hypothermic, in
        severe metabolic acidosis and in the throes of complete cardiac arrest.

(n)    Failed to secure the patient's airway through intubation and mechanical ventilation in the emergency department.

(o)    Failed to properly diagnose and aggressively treat Mr. Quiroz's SIRS and sepsis thereby increasing the risk of and/or causing his death.

(p)    Failed to properly diagnose and treat Mr. Quiroz's severe sepsis thereby increasing the risk of and/or causing his death.

67.    Uniontown Hospital and Fayette Regional Health Services are vicariously liable for the negligence and carelessness of their agents, ostensible agents, employees, and/or servants including those specific acts of negligence and careless of Dr. D'Alessio in his care and treatment of Mr. Quiroz as set forth above, incorporated herein by reference.

68.    Plaintiffs claim damages of these defendants for herself and on behalf of the Estate of Javier Quiroz, deceased, as follows:

(a) For pain and suffering endured by the Plaintiff's Decedent;

(b) Decedent's loss of enjoyment of life;

(c) For loss of the earnings and earning power of the Decedent, including retirement and social security income, for a period of time beginning December 3, 2014 and continuing until the termination of his natural life, which earnings and earning power would have continued for the said period of time but for the death of Mr. Quiroz.

(d) For medical expenses;

(e) For other financial losses suffered as the result of the death of Plaintiff's Decedent;

(f) Any other damages allowed under the Pennsylvania Survival Act and Pennsylvania law.

69.     Plaintiff claims damages of these defendants on behalf of the surviving spouse of Plaintiff's Decedent as follows:

(a) For support and maintenance which he had regularly provided for her and contributions which he had regularly made to her prior to December 3, 2014 and would have continued to provide and make for a period from December 3, 2014 and until the expiration of his natural lifetime;

(b) For loss to the widow of his society, comfort, companionship and direction;

(c) For funeral and burial expenses, including a cemetery lot and grave monument;

(d) For expenses incident to the administration of the Estate of the Decedent

(e) Any other damages permitted under the Wrongful Death Act and Pennsylvania law.

**WHEREFORE**, Plaintiff, BARBARA GARCIA QUIROZ, Independent Administratrix of the ESTATE OF JAVIER QUIROZ, Deceased seeks damages against Defendants, STACEY LYN GALLAGHER, D.O.; MEDEXPRESS URGENT CARE, P.C.-UNIONTOWN; MEDEXPRESS URGENT CARE, P.C.- PENNSYLVANIA, BRYAN STUTCHELL and FRANK W. ALDERMAN t/a MEDEXPRESS URGENT CARE- UNIONTOWN; ANTHONY D'ALESSIO, M.D.; UNIONTOWN HOSPITAL and FAYETTE REGIONAL HEALTH SYSTEM in an amount exceeding the sum of $75,000 exclusive of interests and costs.

## COUNT II

*Barbara Garcia Quiroz, individually and as the Independent Administratrix of the Estate of Javier Quiroz, deceased*
*v.*
*MedExpress Urgent Care, P.C.–Uniontown; MedExpress Urgent Care, P.C.– Pennsylvania; Bryan Stutchell. Frank W. Alderman t/a/ MedExpress Urgent Care–Uniontown; Uniontown Hospital and Fayette Regional Health System*
**(Corporate Negligence)**

70.     Plaintiff incorporates by reference each preceding paragraph of the Complaint as if fully set forth fully herein.

71.     Defendants MedExpress, Uniontown Hospital and Fayette Regional Health System owed the following non-delegable duties of care to Mr. Quiroz:

(a) To use reasonable care in the maintenance of safe and adequate facilities and equipment;

(b) To select and retain only competent physicians and other health care givers;

(c) To oversee all persons who practice medicine and nursing within its walls as to patient care;

(d) To formulate, adopt and enforce adequate rules, policies and procedures to ensure quality care for patients; and,

(e) To use the same degree of care in carrying out the aforesaid non-delegable duties of care as would a reasonable urgent care clinic under the same or similar circumstances.

72.     Each instance of the Corporate Defendants' negligence and carelessness hereafter set forth, then and there concurring with the negligence and carelessness of Dr. Gallagher and Dr. D'Alessio was the direct, proximate and legal cause of the death of Plaintiff's Decedent, Javier Quiroz.

73.     The Corporate Defendants breached the foregoing non-delegable duties of care and were negligent in the following particulars:

(a) In failing to use reasonable care in the maintenance of safe and adequate facilities and equipment;

(b) In failing to select and retain only competent physicians and health care givers including Dr. D'Alessio and Dr. Gonzales;

(c) In failing to properly oversee all persons who practice medicine and nursing within its walls as to patient care;

(d) In failing to formulate, adopt and, if adopted, enforce adequate rules, regulations, policies and procedures relating to the work up, differential diagnosis, diagnosis, and proper treatment of persons presenting with histories, complaints, signs and symptoms as Plaintiff's Decedent presented at MedExpress Uniontown and Uniontown Hospital;

(e) In failing to use the same degree of care in carrying out its non-delegable duties of care as would a reasonable urgent care clinic under the same or similar circumstances; and,

(f) In breaching its non-delegable duties of care when it knew or should have known of its breaches of duty and that its breaches were causing or likely to cause a missed diagnosis of sepsis and systemic inflammatory response syndrome which ultimately lead to multi-organ failure and Mr. Quiroz's death.

74.     Plaintiff claim damages of these defendants for herself and on behalf of the Estate of Javier Quiroz, deceased, as follows:

(a)     For pain and suffering endured by the Plaintiff's Decedent;

(b)    Decedent's loss of enjoyment of life;

(c)    For loss of the earnings and earning power of the Decedent, including retirement and social security income, for a period of time beginning December 3, 2014 and continuing until the termination of his natural life, which earnings and earning power would have continued for the said period of time but for the death of Mr. Quiroz.

(d)    For medical expenses;

(e)    For other financial losses suffered as the result of the death of Plaintiff's Decedent;

(f)    Any other damages allowed under the Pennsylvania Survival Act and under Pennsylvania law.

75.    Plaintiff claims damages of these defendants for and on behalf of the surviving spouse of Plaintiff's Decedent as follows:

(a)    For support and maintenance which he had regularly provided for her and contributions which he had regularly made to her prior to December 3, 2014 and would have continued to provide and make for a period of time from December 3, 2014 and until the expiration of his natural lifetime;

(b)    For loss to the widow of his society, comfort, companionship and direction;

(c)    For funeral and burial expenses, including a cemetery lot and grave monument;

(d)    For expenses incident to the administration of the Estate of the Decedent.

(e)     Any other damages allowed under the Wrongful Death Act and under Pennsylvania law.

**WHEREFORE**, Plaintiff, Barbara Garcia Quiroz, Independent Administratrix of the Estate of Javier Quiroz, Deceased seeks damages against Defendants, MEDEXPRESS URGENT CARE, P.C.-UNIONTOWN; MEDEXPRESS URGENT CARE, P.C.-PENNSYLVANIA, BRYAN STUTCHELL and FRANK W. ALDERMAN t/a MEDEXPRESS URGENT CARE- UNIONTOWN; UNIONTOWN HOSPITAL and FAYETTE REGIONAL HEALTH SYSTEM in an amount exceeding the sum of $75,000 exclusive of interests and costs.

**JURY TRIAL DEMANDED**

Respectfully Submitted,

By: /s/ Howard M. Louik

Howard M. Louik, Esq.
PA ID# 21941
Louik Law Offices
Manor Building, Suite 1301
564 Forbes Ave.
Pittsburgh, PA 15219-2910
Tel. 412.440.7557
howard@louiklaw.net

ATTORNEY FOR PLAINTIFF
*Barbara Garcia Quiroz, Independent Administratrix of the Estate of Javier Quiroz, Deceased*